ARSHAK BARTOUMIAN (SBN 210370)
OMNIA LEGAL, INC.
124 WEST STOCKER STREET SUITE "B"
GLENDALE, CA 91202
818-532-9339
818-394-6452
EMAIL: DISPUTES@OMNIALEGAL.ORG

Attorney for Plaintiff HASMIK MINASYAN

FILED
2012 JUL -3 PM 2:57
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

HASMIK MINASYAN, an individual,

**PLAINTIFF,**

vs.

ALLEN L ADKINS & ASSOCIATES, PC A Texas Professional Corporation HUNT & HENRIQUES A California Company

**DEFENDANTS.**

Case No.: **2:12-cv-01864-ODW-(FMOx)**

**FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST DEFENDANTS ALLEN L ADKINS & ASSOCIATES, PC AND HUNT & HENRIQUES**

Now comes the Plaintiff, Hasmik Minasyan, (hereinafter "Plaintiff") by and through her undersigned counsel and brings her First Amended Complaint against Defendants ALLEN L ADKINS & ASSOCIATES, PC (hereinafter "ALLEN") and HUNT & HENRIQUES (hereinafter "HUNT"), collectively Defendants, for violations of Fair Debt Collection Practices Act [15 U.S.C. §1692-1692p] ("FDCPA") and Fair Credit Reporting Act [15 U.S.C. §1681 et seq.] ("FCRA"), as well as for Defamation by Libel and Invasion of Privacy/false light.

## PRELIMINARY STATEMENT

1. The FDCPA regulates the behavior of collection agencies attempting to

collect a debt on behalf of another. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses [15 U.S.C. §1692(a)-(e)].

2. The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. The Ninth Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated" consumer. [Baker v. G.C. Services Corp., 677 F.2d 775, 778 (9th Cir. 1982); Swanson v. Southern Oregon Credit Service, Inc. 869 F.2d 1222, 1227(9th Cir.1988)]. This objective standard "ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd ... the ignorant, the unthinking and the credulous." [Clomon v. Jackson, 988 F.2d 1314, 1318-19 (2nd Cir. 1993)].

3. To prohibit deceptive practices the FDCPA, at 15 U.S.C. §1692e, outlaws the use of false, deceptive, and misleading collection letters and names a non-exhaustive list of certain per se violations of false and deceptive collection conduct. 15 U.S.C. §1692e(1)-(16). To prohibit harassment and abuses by debt collectors, the FDCPA, at 15 U.S.C. §1692d, further provides that a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt and names a non-exhaustive list of certain per se violations of harassing and abusive collection conduct. 15 U.S.C. §1692d(1)-(6).

4. The FDCPA also prohibits, at 15 U.S.C. §1692c, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, communication by a debt collector in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer

reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

5. Congress enacted the FCRA to establish consumer rights to privacy over their credit and financial information and to ensure the "[a]ccuracy and fairness of credit reporting." FCRA regulates credit reporting agencies as well as creditors, collection agencies and other parties who provide information to credit reporting agencies and/or obtain and use the consumer credit reports.

6. FCRA Section 604, 15 U.S.C. §1681b, identifies the permissible purposes allowed under the act for conducting credit reviews on consumers. Persons may obtain and use a consumer report *"only if they act in accordance with one of these permissible purposes." Scharpf,* 242 F. Supp. 2d at 458. The most familiar and typical "permissible purposes" involve determining eligibility for credit and employment. 15 U.S.C. §1681b(a)(3)(A) and (B).

7. The statute under section 1681b provides in pertinent part:

*"(a) In general. Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances and no other:"* (Emphasis added.) Thus, the strictly limited provisions set forth in section 1681b operate to support the *confidentiality* of consumer reports by limiting their dissemination and any violation of this section also violates consumers' rights to maintain the privacy of such information.

8. In 1996 the FCRA was extensively amended by the Consumer Credit Reporting Reform Act of 1996 ("CCRRA"), Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996). Pursuant to the language of the CCRRAA, the amendments to the FCRA went into effect on September 30, 1997. See *Duncan v. Handmaker,* 149 F. 3d 424, 426 fn. 1 (6th Cir. 1998). Among the more significant amendments was the addition of subsection (f) to §1681b which prohibits obtaining a consumer report without the required permissible purpose. Prior to the 1996 amendments, there was no express provision in the FCRA prohibiting a person from obtaining or using a consumer report without a permissible purpose. After the FCRA was enacted in 1970, courts noticed what appeared to be a loophole. The original sections 1681n and 1681o only created civil liability for failure to comply with the Act. The original section 1681b, which generally stated the

circumstanced under which consumer reporting agencies could provide reports, did not impose a duty on users of reports to refrain from requesting reports without a proper purpose. *Phillips v. Grendahl,* 312 F. 3d 357, 363 (8th Cir. 2002).

9. Thus, prior to the 1996 amendments, civil actions against the users of information could not be premised on a violation of §1681b. Id. Access to a consumer report is authorized under the provisions of 15 U.S.C. §1681b(a)(2) pursuant to the written authorization of the consumer. Also, a person has a permissible purpose to use a consumer report in connection with a credit transaction under 15 U.S.C. §1681b(a)(3)(A). This provides a permissible purpose for a user who "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer…"

## JURSDICTION, VENUE, AND DEMAND FOR JURY TRIAL

10. Jurisdiction of this court arises pursuant to *15 U.S.C. §1962k(d),* which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy." This Court also has jurisdiction of the federal claims asserted pursuant to 28 U.S.C. §1331 and supplemental jurisdiction of the state law claims asserted pursuant to 28 U.S.C. §1367(a).

11. Defendants and each one of them regularly conduct business in the state of California, and therefore, personal jurisdiction is established.

12. Venue is proper in this district pursuant to 28 U.S.C. §1391 because Defendants conduct business in this district and many of the events occurred in this district. Further, Plaintiff resides in this district.

13. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedures, Plaintiff hereby demands a jury trial on any and all issues qualified for a jury trial.

## PRIVATE RIGHT OF REMEDY

14. 15 U.S.C §1692k(a) states that "… any debt collector who fails to comply

with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of-."

15. 15 U.S.C. §1681n and §1681o refer to consumers' ability to bring civil liability action against users/furnishers of information for willful and negligent noncompliance respectively, with regards to the FCRA. However, with respect to violations of 15 U.S.C. §1681b Defendants' liability is triggered pursuant to subsection (f) to §1681b and Plaintiff has private right to sue.

16. With respect to Plaintiff's claims for defamation and invasion of privacy, because Defendants and each one of them have demonstrated willful intent in their unlawful actions. Additionally, the Courts have uniformly rejected creditors' and consumer reporting agencies' arguments that the FCRA bars state law claims. See Sehl v. Safari Motor Coaches, Inc., 2001 U.S. Dist. Lexis 12638 (U.S.D.C. N.D. Cal. 2001)(for detailed discussion); Harper v. TRW, 881F. Supp. 294 (U.S.D.C. S.D. Mich. 1995); Rule v. Ford Receivables, 36 F. Supp.2d 335 (U.S.D.C. S.D. Va. 1999); Watkins v. Trans Union, 118 F. Supp.2d 1217 (U.S.D.C. N.D. Ala. 2000); Swecker v. Trans Union, 31 F. Supp.2d 536 (U.S.D.C. E.D. Va. 1998); Saia v. Universal Card Svc., 2000 U.S.Dist.Lexis 9494, 2000 Westlaw 863979 (U.S.D.C. E.D. La. 2000); Sherron v. Private Issue by Discover, 977 F. Supp.2d 804 (U.S.D.C. N.D. Miss. 1997); Hughes v. Fidelity Bank, 709 F. Supp.2d 639 (U.S.D.C. E.D. Pa. 1989).

## PARTIES

17. Plaintiff is an individual, and at all times relevant herein, was a resident of Los Angeles County, California.

18. Plaintiff is a consumer as defined in 15 U.S.C. §1681a (c).

19. Defendant "ALLEN" is a Texas Professional Corporation.

20. Defendant "HUNT" is a California Company.

21. Defendants and each one of them regularly conduct business in the State of California.

22. Defendants and each one of them is a debt collector as defined in 15 U.S.C. §1692a(6).

23. Defendants and each one of them is a person as defined in 15 U.S.C. §1681a(b).

24. Whenever this First Amended Complaint alleges that any Defendants did any act or thing, it is meant that they, their respective directors, officers, agents, employees, or the directors, agents or employees of their subsidiaries, performed or participated in such act or thing, and in each instance that such act or thing was authorized or ratified by, and done on behalf of and under the direct control of each respective Defendant.

25. Plaintiff is informed and believes and on that basis alleges that Defendants are responsible for the acts, occurrences and transactions as officers, directors or managing agents of Defendants or as their agents, servants, employees and/or joint venturers and as set forth in this First Amended Complaint, and that each of them is legally liable to Plaintiff, as set forth below and herein:

a. Said Officers, directors or managing agents of Defendants personally acted willfully with respect to the matters alleged in this First Amended Complaint;

b. Said Officers, directors or managing agents of Defendants personally authorized, approved of, adopted and/or ratified the acts alleged herein or the agents, servants, employees and/or joint venturers of Defendants did so act;

c. Said Officers, directors or managing agents of Defendants personally participated in the acts alleged herein of Defendants;

d. Said Officers, directors or managing agents of Defendants personally had close supervision of their agents, servants, employees and/or joint venturers of Defendants;

e. Said Officers, directors or managing agents of Defendants personally were familiar with the facts regarding the matters alleged herein;

f. Said Officers, directors or managing agents of Defendants personally failed to investigate the circumstances appertaining to the acts alleged herein. They also failed and refused to repudiate the herein alleged actions and failed to redress the harm done to Plaintiff. Further, said Officers, directors, or managing agents of Defendants failed and refused to punish or discharged the said agents, servants, employees and/or joint venturers of Defendants, even after learning of the acts of the agents, servants, employees and/or joint venturers of Defendants.

26. Defendants are liable to Plaintiff for the relief prayed for in this First Amended Complaint, and any future amended complaint. Further, Plaintiff alleges that each act alleged herein, whether by a named Defendant was expressly authorized or ratified.

## FACTUAL ALLEGATIONS

27. Plaintiff who is not a minor alleges that the foregoing events, starting from date of discovery of the credit inquiries made by Defendants ALLEN and HUNT, which are the subject to this First Amended Complaint, occurred within the past one year.

28. In or around November 2011 Plaintiff obtained her credit bureau reports from the national Credit Reporting Agencies ("CRAs") and learned that her personal, financial and credit information were pulled and reviewed by HUNT on August 14, 2010 and by ALLEN on February 8, 2011 without Plaintiff's knowledge and authorization.

29. Upon research and review of company profiles on ALLEN and HUNT available online, Plaintiff learned that Defendants and each one of them is a collection agency in the business of collecting consumer debts. Based on this information, Plaintiff presumed that at some point Defendants must have tried to purchase debts alleged to be owed by Plaintiff, considered purchasing debts alleged to be owed by Plaintiff, or looked into Plaintiff's history as a potential debtor for overdue and unsatisfied account balances to collect on. However, at no point prior to the credit reviews or at all did Defendants ALLEN and HUNT have ownership of debts owed or alleged to be owed by Plaintiff nor had they communicated to Plaintiff of any such alleged debts and provided a reasonable time for possible disputes, investigations and verifications of any such alleged debts prior to proceeding with the credit reviews or any other collection related actions.

30. Defendants ALLEN and HUNT violated 15 U.S.C. §1681 by running credit inquiries into Plaintiff's consumer credit reports maintained by and with one or more of the CRAs, because they lacked Plaintiff's knowledge and authorization, or otherwise a permissible purposes pursuant to §1681b of the above cited title.

31. Specifically, HUNT on August 14, 2010 and ALLEN on February 8, 2011 violated 15 U.S.C. §1681b, by pulling Plaintiff's consumer credit reports, without the knowledge or consent of Plaintiff. Furthermore, Plaintiff had not requested reports from

Defendants ALLEN and HUNT for purpose of extending credit, employment, insurance underwriting, or any other purposes that are allowed under this section. Defendants were not creditors to any accounts of Plaintiff or otherwise involved in a credit transaction with Plaintiff. Defendants' credit reviews resulted in credit inquiries, which are reflecting on Plaintiff's credit reports until today.

32. At or about the time Defendants ALLEN and HUNT initiated their credit pulls of Plaintiff's consumer report:

a. Plaintiff did not authorize Defendant ALLEN or Defendant HUNT to obtain her consumer reports from CRAs.

b. Plaintiff did not authorize CRAs to furnish her consumer report to Defendant ALLEN nor to Defendant HUNT.

c. Plaintiff did not apply for any credit, loans or services with Defendant ALLEN nor with Defendant HUNT.

d. Plaintiff did not have any contractual relationship for credit, loans or services with Defendant ALLEN nor with Defendant HUNT.

e. Plaintiff did not owe any debts to Defendant ALLEN or to Defendant HUNT.

f. Plaintiff did now owe any debt as the result of a judgment neither to Defendant ALLEN nor to Defendant HUNT.

g. Plaintiff did not apply for any employment with neither Defendant ALLEN nor with Defendant HUNT.

h. Plaintiff did not apply for any insurance from Defendant ALLEN or from Defendant HUNT.

*i.* Plaintiff did not have any existing accounts within the meaning the Electronic Fund Transfer Act ("EFTA") §903(2), pursuant 15 U.S.C. §1681a(f)(4). *"the term 'account' means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an 'open end credit plan' as defined in section 1602(i) of this title), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement." (Emphasis added) "the terms 'open end credit plan' and 'open end consumer credit plan' mean a plan under which the creditor reasonably contemplates repeated transactions, which*

*prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance."* (Emphasis added) or credit obligation with Defendant ALLEN or Defendant HUNT.

j. Plaintiff did not have any jurisdiction issued order to CRAs to furnish Plaintiff's consumer report to Defendant ALLEN nor Defendant HUNT.

k. No head of State or local child support enforcement agency requested CRAs to provide Plaintiff's consumer reports to neither Defendant ALLEN nor Defendant HUNT.

l. No agency administering a State plan under Section 454 of the Social Security Act (42 U.S.C. Section 654) requested CRAs to provide Plaintiff's consumer report to neither Defendant ALLEN nor Defendant HUNT.

m. Plaintiff did not apply for any license or other benefit granted by a government instrumentality through Defendant ALLAN or Defendant HUNT.

n. Plaintiff did not receive any "firm offer of credit or insurance" from Defendant ALLEN nor Defendant HUNT.

33. On or about November 1, 2011 Plaintiff sent letters to each CRA, addressing the unauthorized credit reviews of ALLEN and HUNT and requesting deletion of the credit inquiries from Plaintiff's credit files, unless ALLEN and HUNT could provide and support a justifiable purpose for conducting the disputed credit reviews.

34. On or about November 15, 2011 Plaintiff sent a letter of dispute to HUNT concerning its credit review of April 14, 2010 requesting its permissible purpose per FCRA. On or about November 15, 2011 Plaintiff sent a similar dispute letter to ALLEN concerning its credit review of February 8, 2011.

35. Defendants HUNT and ALLEN failed to answer back to Plaintiff's requests addressed to them directly and failed to delete the credit inquiries to at least avoid further damage to Plaintiff's credit records.

36. On or about December 28, 2011 Plaintiff sent follow up letters to Defendants HUNT and ALLEN at each of their respective addresses, addressing their failure to respond or take appropriate corrective action with respect to Plaintiff's initial letters of dispute.

37. Even after Plaintiff's disputes and follow up letters both Defendant HUNT and Defendant ALLEN failed to confirm to Plaintiff of existence of a debt which they owned and in connection to which they conducted their credit reviews.

38. While FCRA at §1681b(a)(3)(A) does permit credit reviews for "collection of an account", the section does not simply conclude at that and FCRA does not absolutely and unconditionally extend the right to all parties considering to possibly collect on such debt, without ownership and prior to rights of collection and communication of the subject debt to the consumer. Trying, considering, looking, deciding or determining are not the same as same as legally owning a debt and/or the right to collection of such debt and are insufficient to satisfy the requirements of FCRA §1681b(a)(3)(A) for third party debt collectors to use as a shield to avoid liability for unlawful credit reviews conducted on consumers.

39. For third party debt collectors, such as Defendants ALLEN and HUNT, who have no ownership rights or involvement in the creation of debts, and who merely collect on the debts of others, it is especially vital for them to communicated to the purported debtors in order to notify them about not only the alleged debt but to identify themselves and their part in the collection process of such debts. Defendants ALLEN and HUNT both failed to provide Plaintiff such notice and requisite disclosures concerning the debts.

40. Defendants' violations of the FDCPA do not just involve their failure to communicate to Plaintiff of any debts in connection to which their credit reviews might have been made, but they actually used the credit reviews as unfair and unconscionable means to collect or to determine if the alleged debts are even collectible. This is evidenced by the fact that Defendants ALLEN and HUNT never contended to Plaintiff's claims that they do not own any debts owed or alleged to be owed by Plaintiff and that they never made any actual collection efforts against Plaintiff prior to, at the time or even after their credit reviews.

41. While under FDCPA section 1692e disclosures must follow 5 days after the initial notice, the initial demand notice must be made prior to any collection activity. Defendants ALLEN and HUNT did not provide neither initial notices nor the requisite disclosures to Plaintiff, and yet they proceeded with credit reviews on Plaintiff without

communication or confirmation of any purported debts or verification of identity of the purported debtor.

42. Plaintiff was a victim of identity theft several years ago and had Defendants communicated to Plaintiff prior to their conduct of credit review, any alleged debt would have been investigated first, instead of unnecessarily resulting in credit reviews and the consequential inquiries on Plaintiff's credit file.

43. To date both Defendant ALLEN and Defendant HUNT have failed to even specify the name and account number of any alleged debts or claim ownership of any such debt in connection to which their collection inquiries were made. Even after Plaintiff's multiple disputes prior to initiation of a lawsuit and after the bringing of her claims in the original Complaint Defendants ALLEN and HUNT continue to press on the assertions that as debt collectors they are entitled to credit reviews but fail to identify any alleged debt that Plaintiff owes to them or more importantly owed and was aware that she owed at the time of the credit reviews.

44. To date, after multiple correspondences, Defendants still continues to maintain records of their unauthorized credit inquiries on Plaintiff's credit records.

45. As a result of Defendants' conduct, Plaintiff has suffered:

a. Actual damages and serious financial harm arising from monetary losses relating to denials to new credit, loss of use of funds, loss of credit and loan opportunities, excessive and/or elevated interest rate and finance charges;

b. Out of pocket expenses associated with communicating with Defendant, disputing the unauthorized credit inquiry, as well as consultation fees paid to attorneys and other professionals to obtain information and advice about consumer rights credit reporting and use;

c. Emotional distress and mental anguish associated with having her credit information unlawfully reviewed and having derogatory information transmitted about Plaintiff to other people both known and unknown;

d. Decreased credit score and creditworthiness, which may result in inability to obtain credit, employment or housing on future attempts.

**FIRST CLAIM FOR RELIEF**

**(Violations of FDCPA)**

**Against All Defendants**

46. Plaintiff incorporates all preceding paragraphs as though alleged in full in this cause of action.

47. In committing the acts against Plaintiff as alleged above, Defendants subjected Plaintiff to unfair debt collection practices. Their violations include at least the following:

a) Failing to provide notice of debts to Plaintiff, complete with all required disclosures, per 15 U.S.C. §1692e (11).

b) Failing to provide written notices of Plaintiff's right to verification and information about their alleged debts, per 15 U.S.C. §1692g(a);

c) Using unfair and/or unconscionable means to collect an alleged debts, in violation of 15 U.S.C. §1692f;

48. As a consequence of such violations, Plaintiff has sustained special and general damages according to proof, in addition to attorney's fees and costs as determined by the court pursuant to 15 U.S.C. §1692k.

**SECOND CLAIM FOR RELIEF**

**(Violations the FCRA)**

**Against All Defendants**

49. Plaintiff incorporates all preceding paragraphs as though alleged in full in this cause of action.

50. In committing the acts against Plaintiff as alleged above, Defendants subjected Plaintiff to unfair credit reporting practices. Their violations include at least the following:

a) Obtaining and reviewing Plaintiff's credit report from CRA's without having permissible purpose required under 15 U.S.C. §1681b.

51. Based on information and belief, the credit reviews and the credit inquiries were used as collection tactics by Defendants with intent to obtain information and thereby unfair advantage over Plaintiff and/or harm Plaintiff's good name and credit rating. Thus, the credit review inquiries, while a clear violation of fair credit reporting laws, based on the circumstances of this case also constitute unlawful collection attempts under the

Federal FDCPA. The accusations stated in this cause of action directly relate to the allegations asserted throughout this First Amended Complaint.

52. As a result of these unauthorized actions by the Defendant mentioned above, Plaintiff has suffered damages and is entitled to actual damages, punitive damages as the court may allow, as well as reasonable costs and attorney's fees pursuant to 15 U.S.C. §1681(n).

**THIRD CLAIM FOR RELIEF**

**(Defamation-Libel)**

**Against All Defendants**

53. Plaintiff incorporates all preceding paragraphs as though alleged in full in this cause of action.

54. Credit libel or libel is "a false and unprivileged publication . . ." Cal. Civ.Code §§ 45-46. To state a claim for either libel a plaintiff must establish "the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado, 72 Cal.App.4th 637, 645, 85 Cal.Rptr.2d 397(1999);* Cal. Civ.Code §§ 45-46. Publication means "communication to a third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made." *Id.*

55. The credit inquiries made by Defendants ALLEN and HUNT are defamatory and libelous because the general public and credit grantors in particular, recognize collection agencies and presume that when a collection agency pulls and reviews a consumer's credit file, there must exist a valid claim of debt owed by the consumer to such collection agency, regardless of the circumstances under which the inquiry was made.

56. The credit inquiries create a presumption of delinquencies and an overall poor fiscal responsibility, damaging Plaintiff's credit rating and her ability to secure and utilize credit and maintain good relationships with creditors.

57. The credit inquiries constitutes libel per se in that they clearly exposed, and continue to expose, Plaintiff to ridicule and tend directly to injure her by portraying her as a delinquent and a poor credit risk.

58. Plaintiff has been damaged by loss of reputation, shame, and embarrassment, as

well as having suffered severe emotional distress.

59. Based on information and belief Plaintiff alleges that in doing the foregoing acts, the Defendants acted in willful disregard for the consequences of their actions and the effects on the Plaintiff and her credit, and did so intentionally and willfully, with malice, and with the intent to injure and/or oppress Plaintiff.

60. CRAs may be the ones publicizing consumer credit reports, but ALLEN and HUNT along with their codefendants are responsible for the information that got publicized. ALLEN and HUNT along with their codefendants are further liable under Plaintiff's defamation claims since their credit inquiries were false collection and debt claims against Plaintiff, without actual proof of validity of any such debt or clear intent of collections and Defendants both failed to use reasonable care to determine the truth or falsity of such allegations.

## FOURTH CLAIM FOR RELIEF

**(Invasion of Privacy/False Light)**

**Against All Defendants**

61. Plaintiff incorporates all preceding paragraphs as though alleged in full in this cause of action.

62. Defendants' above actions violated Plaintiff's right of privacy by impermissibly accessing Plaintiff's most private information and placing the Plaintiff in a false light before the eyes of others, including potential credit grantors and creditors as well as family, friends and the general public.

63. By such unauthorized invasion, publication and circulation of Plaintiff's name and the inaccurate information, Defendants invaded Plaintiff's right to privacy, subjected Plaintiff to ridicule and contempt, injured Plaintiff's personal esteem, reflected disgracefully on Plaintiff's character, diminished Plaintiff's high standing, reputation and good name among family, friends, neighbors and business associates, destroyed Plaintiff's peace of mind, and caused Plaintiff severe mental and emotional distress.

64. The conducts of Defendants ALLEN and HUNT were a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendants ALLEN

and HUNT are liable to compensate the Plaintiff for the full amount of actual, compensatory and punitive damages, as well as such other relief, permitted under the law.

## PRAYER FOR RELIEF

65. Plaintiff incorporates all preceding paragraphs as though alleged in full in this cause of action.

66. Plaintiff contends that the actions of the Defendants ALLEN and HUNT were willful violations of the Fair Debt Collection Practices Act, Fair Credit Reporting Act, constitute defamatory to Plaintiff's name as a consumer and borrower and have deprived her of the right to privacy in maintaining the confidentiality of her personal and financial data.

67. Plaintiff, through her undersigned counsel, respectfully requests for a judicial declaration that the conduct of Defendants ALLEN and HUNT violated applicable statutes. Plaintiff, through her attorney, further requests that judgment be entered in her favor and against Defendants ALLEN and HUNT as follows:

1. Statutory Damages and/or Actual and General Damages sustained by Plaintiff in an amount to be proven at trial, pursuant to 15 U.S.C. §1681n(a)(1) and (b) and 15 U.S.C. §1692k(a)(1).
2. Injunctive relief instructing Defendants ALLEN and HUNT to delete the unlawfully made credit inquiries from Plaintiff's credit reports.
3. Costs and reasonable attorney's fees, pursuant to 15 U.S.C. §1681n(a)(3) and (c) and 15 U.S.C. §1692k(a)(3).
4. Punitive damages pursuant to 15 U.S.C. §1681n(a)(2) as the court may allow.
5. Any other further damages this Honorable Court finds just and proper.

DATED: July 2, 2012

Respectfully submitted

By: ______________________

Arshak Bartoumian, Esq.

Attorney for Plaintiff